UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
                                                    :
BWP MEDIA USA INC. d/b/a PACIFIC                    :
COAST NEWS and NATIONAL PHOTO                       :
GROUP, LLC,                                          :
                                                    :
                              Plaintiffs,           :
                                                    :
              -v-                                   :                14-CV-121 (JPO)
                                                    :
HOLLYWOOD FAN SITES, LLC, FAN SITES                :          OPINION AND ORDER
ORG, LLC, HOLLYWOOD.COM                              :
HOLDINGS, LLC, HOLLYWOOD.COM,                       :
LLC, R&S INVESTMENTS, LLC,                           :
HOLLYWOOD MEDIA CORP., FAN SITES                   :
NETWORK, LLC, MITCHELL                              :
RUBENSTEIN, and LAURIE S. SILVERS,                 :
                                                    :
                              Defendants.    :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        BWP Media USA Inc. d/b/a Pacific Coast News and National Photo Group, LLC

(collectively, "Plaintiffs") have brought suit against a collection of companies and two

individuals[1] (collectively, "Defendants") who, they allege, have violated federal copyright law as

well as the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Now before the

Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2)

and 12(b)(6).  For the reasons that follow, the motion is granted in part and denied in part.

---

[1] The parties named as defendants are Hollywood Fan Sites, LLC; Fan Sites Org, LLC;
Hollywood.Com Holdings, LLC; Hollywood.Com, LLC; R&S Investments, LLC; Hollywood
Media Corp.; Mitchell Rubenstein; and Laurie S. Silvers.  The suit also originally named as a
defendant Fan Sites Network, LLC, but Plaintiffs have dismissed that claim without prejudice.
(Dkt. No. 14.)

I.      **Background**

According to the allegations in the complaint, which are accepted as true at this stage,

Plaintiffs own the rights to numerous "photographs featuring celebrities, which they license to

online and print publications."  (Dkt. No. 1 ("Compl.") ¶ 19.)  The Defendants—six companies

and two individuals—collectively operate the "Fan Sites Network."  (*Id.* ¶ 15.)  Plaintiffs say that

the Fan Sites Network is composed of "more than fifteen hundred . . . websites dedicated to

celebrities, films, television shows, and other artists," which "generate over six hundred million

. . . public page views per month."  (*Id.*)  As part of their business model, Defendants have

engaged in widespread infringement of the copyrights to Plaintiffs' photographs: according to

the complaint, Defendants' "entire business" is sustained by displaying "stolen" or improperly

licensed photographs—including photographs owned by Plaintiffs—on websites controlled by

Defendants.  (*Id.* ¶¶ 23, 27-29.)  They do so by recruiting "dummy webmasters" who "agree to

update and maintain the content on the website[s]" without pay, but all the while, Defendants

"retain the right of full control over the content of the websites."  (*Id.* ¶¶ 33-35.)  Defendants

monitor the websites to ensure that the content is regularly updated and also "induce, cause

and/or materially contribute" to the infringing activity on the Defendants' websites.  (*Id.* ¶¶ 38,

42.)  Despite their alleged actual or constructive knowledge of the improper use of Plaintiffs'

photographs, Defendants have not stopped or limited the theft, although they have the right and

ability to do so through the implementation of "simple measures."  (*Id.* ¶¶ 36, 39-41.)

Defendants profit from the websites because they host paid advertisements, and all advertising

revenue "is realized by Defendants alone."  (*Id.* ¶ 45.)

On the basis of these allegations, Plaintiffs initiated this lawsuit on January 8, 2014.

(Compl.)  After an extension of time agreed upon by the parties, Defendants filed the instant

motion to dismiss on March 28, 2014.  (Dkt. No. 18.)  In June, the parties filed additional letter

briefing regarding the Second Circuit's nonprecedential decision in *Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (summary order).  (Dkt. Nos. 32, 33.)

## II.   Discussion

Defendants have moved to dismiss on two grounds.  First, Defendants Hollywood.com Holdings, LLC; R&S Investments, LLC; Hollywood Media Corp.; and individual defendants Mitchell Rubenstein and Laurie S. Silvers (collectively, the "Foreign Defendants") have moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Second, all Defendants have moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6).

### A.   Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  "[W]here, as here, a court relies on pleadings and affidavits, the complaint need only allege facts constituting a prima facie showing of personal jurisdiction." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258 (ALC), 2014 WL 1331046, at *2 (S.D.N.Y. Mar. 31, 2014) (citation and internal quotation marks omitted); *accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam). All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . ."  *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  However, the Court will not "draw argumentative inferences in the plaintiff's favor, nor accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation and internal quotation marks omitted).

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is "a statutory basis for exercising personal

jurisdiction," *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013), and second deciding whether the exercise of jurisdiction comports with due process, *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir.) (per curiam), *cert. denied*, 134 S. Ct. 2888 (2014).  In the statutory portion of the analysis, the court in a federal question case "applies the forum state's personal jurisdiction rules," unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted).  Thus, New York's statutory law applies in this case unless there is a federal statutory basis for jurisdiction.

Defendants assert that the exercise of personal jurisdiction is improper as to the Foreign Defendants.  (Dkt. No. 19 ("Defs.' Br.") at 6.)

### 1.    General Jurisdiction

Plaintiffs contend that they can bring Foreign Defendant Hollywood Media Corp. ("HMC") into this forum in the exercise of general jurisdiction.  (Dkt. No. 27 ("Ptfs.' Br.") at 6.) New York's case law interpreting Rule 301 of the Civil Procedure Law and Rules historically permitted the exercise of personal jurisdiction, for purposes of New York statutory law, "over a foreign corporation that is engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the state, even if the cause of action is unrelated to the defendant's New York activities." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (brackets, citation, and internal quotation marks omitted). However, both parties have failed to raise the question whether general jurisdiction over HMC would comport with the Due Process Clause following the Supreme Court's recent decision in

4

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), which was decided before the motion to dismiss and subsequent briefing were filed.[2]

General jurisdiction over HMC is inconsistent with due process in this case. "[G]eneral jurisdiction exists only when a corporation's contacts with a state are so 'continuous and systematic' as to render it *essentially at home* in the forum State." *Sonera Holding B.V.*, 750 F.3d at 225 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (emphasis added; brackets and internal quotation marks omitted). The Supreme Court clarified in *Daimler* that the "paradigm bases" for determining the place where a corporation is "at home" are "the place of incorporation and the principal place of business." *Id.* (citing *Daimler*, 134 S. Ct. at 760). "Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile." *Reich v. Lopez*, No. 13 Civ. 5307 (JPO), 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014).

Plaintiffs originally asserted in their complaint that HMC's principal place of business is in New York City. (Compl. ¶ 11.) This bare allegation, however, is insufficient; further, it is countered by the affidavit of Mitchell Rubenstein, the CEO of HMC, who asserts that HMC is a Florida corporation with its principal place of business in Florida. (Dkt. No. 22 ("Rubenstein Decl.") ¶ 10.) In their opposition to the motion to dismiss, Plaintiffs abandon their prior allegation that HMC has a New York principal place of business and do not make any effort to show that HMC is "at home" in New York.[3] Rather, they set forth a number of claims regarding

---

[2] Along the same lines, the parties have also neglected to note that the scope of CPLR 301 is presently uncertain in light of *Daimler*. *See Reich v. Lopez*, No. 13 Civ. 5307 (JPO), 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014). However, it is unnecessary to reach this question of state law in light of the Court's conclusion that general jurisdiction over HMC would not comport with due process.

[3] Plaintiffs apparently do not intend to invoke the Court's specific jurisdiction over HMC or other Foreign Defendants. In any event, the complaint fails to plausibly allege that HMC and the other Foreign Defendants have contacts with New York that are linked to the cause of action in

HMC's "repeated business transactions . . . that occurred in New York, were entered into with New York-based companies, and/or produced substantial revenue from goods used in New York" (Dkt. No. 28 ("Goldstein Decl.") ¶ 3), all of which are unrelated to the matter at hand. Even assuming the truth of these purported facts—and the Court notes that many of them are contested by Defendants—Plaintiffs leave unanswered the essential question under governing law: whether New York is HMC's "home." "[E]ven a company's engagement in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum." *Sonera Holding B.V.*, 750 F.3d at 226 (quoting *Daimler*, 134 S. Ct. at 761) (brackets and internal quotation marks omitted).

While Plaintiffs also claim that HMC has an office on Broadway in New York City (Compl. ¶ 6), this, too, fails to answer the question of where HMC is at home—assuming there is such an office, which the defendants dispute.[4]  Even if HMC has a New York office, this does not rule out offices in other locations, and notably, Plaintiffs do not press the contention that the purported New York office is HMC's principal office or otherwise would render HMC at home in New York.  *See Daimler*, 134 S. Ct. at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

Plaintiffs have failed to show that HMC is subject to general jurisdiction in New York.

---

this lawsuit, as would be required for specific jurisdiction.  While the complaint claims that venue is proper "because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District" (Compl. ¶ 18), this conclusory statement is not supported by factual assertions stating that any particular act alleged in the complaint was sufficiently connected with New York to permit specific jurisdiction.

[4] A reply affidavit from Rubenstein, HMC's CEO, states that HMC "does not have an office, or any real property in New York and, to [Rubenstein's] knowledge, it never has."  (Dkt. No. 31 ("Rubenstein Reply Decl.") ¶ 6.)

2.      **RICO Jurisdiction**

Plaintiffs' only asserted basis for jurisdiction over the rest of the Foreign Defendants (and their secondary basis for claiming jurisdiction over HMC) is pursuant to 18 U.S.C. § 1965(b), a subsection of RICO that "provides for nationwide service and jurisdiction over 'other parties' not residing in the district, who may be additional defendants of any kind," if the district court finds that "the 'ends of justice' so require." *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998). "[I]t is generally accepted that 'ends of justice' jurisdiction is authorized where the RICO claim could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010) (collecting cases).

There appears to be no dispute that at least one of the Defendants—Hollywood.com, LLC (*see* Defs.' Br. at 3)—is subject to initial personal jurisdiction in New York pursuant to 18 U.S.C. § 1965(a), which provides that a RICO action may proceed against a person in a "district in which such person resides, is found, has an agent, or transacts his affairs." As to the rest of the Defendants, Plaintiffs assert that the ends of justice require national jurisdiction pursuant to RICO because there is no district court that would have jurisdiction over all Defendants.[5] However, the Court needs not reach this question, because Plaintiffs "cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants" if the RICO claim is dismissed. *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012). Because the Plaintiffs fail to state a claim

---

[5] Even if there were national RICO *statutory* jurisdiction over Defendants pursuant to § 1965, there is still some question regarding whether such jurisdiction would comport with due process. After *Daimler*, more may be required to show that Defendants are subject to general jurisdiction in New York or that the RICO conspiracy involved a sufficient connection to New York to permit specific jurisdiction over the Foreign Defendants. For the reasons explained below, it is unnecessary to resolve this issue here.

under RICO, for the reasons discussed below, it is unnecessary to explore the question further at this point.

Without the reach of RICO jurisdiction, and because general jurisdiction over HMC is improper, there is no basis for Plaintiffs to bring the Foreign Defendants into this Court. Therefore, the motion to dismiss the Foreign Defendants for lack of personal jurisdiction is granted.

**B.    Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010). A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).

In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted). "Integral"

documents are those "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

### 1.      Direct Copyright Infringement

"The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106). "A party who violates the exclusive rights of the copyright owner is an infringer, liable for damages pursuant to 17 U.S.C. § 504." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013).

Courts in this district have held that "[t]o withstand a motion to dismiss, a complaint based on copyright infringement must allege: (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright." *Palatkevich v. Choupak*, Nos. 12 Civ. 1681 (CM), 12 Civ. 1682 (CM), 2014 WL 1509236, at *6 (S.D.N.Y. Jan. 24, 2014) (quoting *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000)) (internal quotation marks omitted). Defendants do not contest that Plaintiffs' complaint and attachments fulfill the requirements of designating the works at issue and asserting that Plaintiffs own the copyrights to those works.[6]

---

[6] Plaintiffs attach exhibits to the complaint setting out the photographs that are the subjects of this action. Not all of these photographs, however, are alleged to have been registered at the time the suit was instituted; rather, some were the subject of pending applications for registration. (*See* Compl. Exs. 1-2.) "Subject to certain exceptions, the Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010); *see* 17 U.S.C. § 411(a). There is a split between the federal courts of appeals regarding whether registration is necessary before a suit can be filed or if a pending application is enough. The Second Circuit recently noted the split but avoided ruling on the issue. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). Courts in this district generally hold that a copyright registration is required, and that a pending application

The complaint alleges that Defendants "are the registered owners of, and collectively operate" all of the websites that are part of the Fan Sites Network, and that "Plaintiffs' photographs appear on Defendants' websites" without authorization.  (Compl. ¶¶ 24, 28-29.) Defendants "encourage the theft of content" by webmasters "under their direction and control," and Defendants further "induce, cause and/or materially contribute to the dummy webmasters' theft of Plaintiff's [sic] photographs." (Compl. ¶¶ 23, 42.)  The complaint also says, in sum, that "Defendants' entire business centers on profiting through a carefully crafted business model that attempts to use the Copyright laws in a manner not supported under the law to encourage the theft of content created by photographers by straw puppet proxies under their direction and control."  (*Id.* ¶ 23.)  Last, the Complaint alleges that "Defendants have violated Plaintiffs' exclusive right to reproduce their photographs by creating thumbnail copies—and also reproduced full-sized images—of Plaintiffs' photographs on their websites."  (Compl. ¶ 30.) Plaintiffs also assert that Defendants' conduct violates their exclusive rights of display and distribution of the photographs.  (*Id.* ¶¶ 31-32.)

Defendants contend that the complaint fails to allege that the *Defendants* themselves, as opposed to the nonparty webmasters, were the parties who reproduced the infringing photographs on the websites in question.  "Direct liability requires 'volitional conduct' that 'causes' the infringement."  *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (citing *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131

---

will not do.  *See Accurate Grading Quality Assurance, Inc. v. Thorpe*, No. 12 Civ. 1343 (ALC), 2013 WL 1234836, at *7 (S.D.N.Y. Mar. 26, 2013) (citing *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09 Civ. 2669 (LAP), 2012 WL 1021535, at *2, *4-5 (S.D.N.Y. Mar. 26, 2012) (collecting cases)).  It is unnecessary for the Court to decide whether a completed registration is a required element of a copyright claim here, however: Defendants did not raise Plaintiffs' failure to register certain works at this stage, and because the issue is not jurisdictional, *see Reed Elsevier*, 559 U.S. at 166, the Court does not need to raise the issue *sua sponte*.

(2d Cir. 2008)), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (summary order).

Initially, the simple assertion that Defendants own websites and that Plaintiffs' photographs appear on those websites is insufficient to plead volitional infringement by Defendants. The statement that Defendants "ma[de] the photographs available to millions of users to copy and/or download" (Compl. ¶ 32) goes no further. "[T]he display of copyrighted images on a defendant's website does not demonstrate volition." *Wolk*, 840 F. Supp. 2d. at 742-43. The ownership of websites used by third parties to commit copyright infringement places the Defendants in a position analogous to that of a "store proprietor who charges customers to use a photocopier on his premises"—and "it seems incorrect to say, without more, that such a proprietor 'makes' any copies when his machines are actually operated by his customers." *Cartoon Network*, 536 F.3d at 132. The fact that Defendants own the sites, standing alone, does not create copyright liability for the actions of third parties.

Next, Plaintiffs' complaint claims that Defendants "caused," "induced," "encouraged," or otherwise contributed to infringement by third parties, the webmasters. The Second Circuit has instructed that there is a "meaningful distinction between direct and contributory copyright infringement," and continued:

> If Congress had meant to assign direct liability to both the person who actually commits a copyright-infringing act and any person who actively induces that infringement, . . . it knew how to draft a statute that would have this effect. Because Congress did not do so, the [Supreme Court in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984)] concluded that "the Copyright Act does not expressly render anyone liable for infringement committed by another."

*Cartoon Network*, 536 F.3d at 133 (quoting *Sony*, 464 U.S. at 434). As the Fourth Circuit has framed the issue, "[t]here must be actual infringing conduct with a nexus sufficiently close and

causal to the illegal copying that one could conclude that the [defendant] himself trespassed on the exclusive domain of the copyright owner." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004), *quoted in Cartoon Network*, 536 F.3d at 130. The Fourth Circuit suggested that it considered the volitional conduct that is required for a direct infringement claim to be, "specifically, the act constituting infringement." *Id.* at 551.

It is unclear in this circuit whether conduct short of the actual infringement itself can give rise to direct liability. *See Cartoon Network*, 536 F.3d at 133 ("We need not decide today whether one's contribution to the creation of an infringing copy may be so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy."). The Second Circuit in *Cartoon Network* concluded only that in the case before it, concerning Cablevision's operation of a remote-storage DVR system, it did not. *Id.*

Here, it is alleged that Defendants engaged in volitional conduct in encouraging the webmasters to infringe Plaintiffs' copyrights. However, Defendants' actions set out in the complaint may not give rise to direct infringement liability. Contributory copyright infringement, in contrast to direct infringement, "occurs where 'one . . . with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013) (quoting *Arista Records*, 604 F.3d at 118); *see also Zappa v. Rykodisc, Inc.*, 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011) ("Contributory liability for copyright infringement is premised on 'personal conduct that encourages or assists the infringement.'" (quoting *Arista Records*, 604 F.3d at 118)). Contributory liability appears to be more apt to describe the sort of conduct that Defendants attempt to allege in these portions of the complaint. "[T]he Supreme Court has strongly signaled its intent to use the doctrine of contributory infringement, not direct infringement, to 'identify[ ] the circumstances in which it is just to hold one individual

accountable for the actions of another.'"  *Cartoon Network*, 536 F.3d at 133 (alteration in

original) (quoting *Sony*, 464 U.S. at 435).  Plaintiffs' complaint does not explain how

Defendants' "contribution to the creation of an infringing copy may be so great that it warrants

holding that party directly liable for the infringement, even though another party has actually

made the copy," *id.*, in a way that preserves a meaningful distinction between direct and

contributory copyright infringement.

However, Plaintiffs have stated a claim for direct copyright infringement through their

allegation that Defendants reproduced Plaintiffs' copyrighted photographs and created thumbnail

copies of those photographs.  (Compl. ¶ 30.)  In *Wolk v. Kodak Imaging Network, Inc.*, a court in

this district rejected an allegation that the defendant's website created copies of copyrighted

images on a motion for summary judgment.  840 F. Supp. 2d at 741-43.  This conclusion,

however, rested on that court's determination (based on undisputed facts in the summary

judgment record) that the reproduction, display, or transmission of the images in question was

effectuated through "an automated process with no human intervention by any employee of the

. . . Defendants."  *Id.* at 742.

Here, in contrast, the complaint states that Defendants themselves reproduced the

photographs and created thumbnail images—the acts by which the alleged infringement took

place.  The complaint is short on certain details regarding the infringement, but assuming the

truth of its allegations, Plaintiffs have asserted that Defendants engaged in volitional acts that

constitute direct infringement of the Plaintiffs' right of distribution.  Therefore, the motion to

dismiss is denied as to the claim of direct infringement.

### 2.    Contributory Copyright Infringement

"Through contributory infringement, one infringes 'by intentionally inducing or

encouraging direct infringement.'"  *In re Cellco P'ship*, 663 F. Supp. 2d 363, 370 (S.D.N.Y.

2009) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005));

*see also Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) ("Two

types of activities that lead to contributory liability are: (i) personal conduct that encourages or

assists the infringement; and (ii) provision of machinery or goods that facilitate the

infringement.").   "[T]here can be no contributory infringement absent actual infringement."

*Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005).

      "To establish a claim for contributory copyright infringement, a plaintiff must allege that

the defendant 'with knowledge of the infringing activity, induced, caused, or materially

contributed to the infringing conduct of another.'"   *Wolk*, 840 F. Supp. 2d at 750 (quoting

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971))

(internal quotation marks omitted).   "The knowledge standard is an objective one; contributory

infringement liability is imposed on persons who 'know or have reason to know' of the direct

infringement."   *Arista*, 604 F.3d at 118 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

1004, 1020 (9th Cir. 2001)) (emphasis omitted).

      First, Defendants argue that Plaintiffs have failed to allege knowledge of infringement.

(Defs.' Br. at 12.)   The complaint states that "Defendants have actual knowledge that the

webmasters are infringing upon Plaintiffs' copyrights" (Compl. ¶ 56), and goes on to assert:

> Defendants are aware of facts or circumstances from which the
> Infringement are [sic] apparent and any claim to the contrary
> amounts to willful blindness. . . . Defendants are aware of the high
> probability of the fact that the websites are infringing upon the
> Plaintiffs' copyrights and Defendants consciously avoid
> confirming that fact.

(*Id.* ¶¶ 57-58.)   These pleadings contain nothing but bare legal conclusions, which are not factual

allegations entitled to a presumption of truth.   *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

However, the complaint makes other factual claims regarding the alleged scheme and Defendants' knowledge of it.  It states that Defendants are the owners of the websites that make up the Fan Sites Network, but do not run the sites from day to day; rather, they "recruit individuals ('dummy webmasters') to each 'adopt' one of Defendants' websites."  (Compl. ¶¶ 24, 33.)  Defendants intentionally induced the infringement of Plaintiffs' copyrights by the webmasters, who were purportedly "straw puppet proxies" encouraged by Defendants to "steal" photographs.  (*See id.* ¶ 23.)  The webmasters are the parties who "update and maintain the content on the website[s]," but the Defendants "monitor the websites to ensure that content is updated on a regular basis."  (*Id.* ¶¶ 34, 38.)  The complaint also says Defendants "have knowledge or have reason to know of the dummy webmaster's [sic] theft of Plaintiffs' photographs" and "know that the most conspicuous use of the websites is the display [of] Plaintiff's [sic] stolen photographs."  (*Id.* ¶¶ 37, 43.)  All told, the complaint's allegations of knowledge are somewhat vague, but they are sufficient to survive dismissal.  Plaintiffs have alleged Defendants' knowledge of the webmasters' direct infringement of Plaintiffs' copyrights.

As a second basis for attacking the contributory infringement claim, Defendants argue that the complaint fails to allege that Defendants materially contributed to copyright infringement.  Contributory liability "exists if the defendant engages in personal conduct that encourages or assists the infringement."  *Arista Records*, 604 F.3d at 118.  "An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish a claim for contributory infringement."  *Wolk*, 840 F. Supp. 2d at 750 (brackets and internal quotation marks omitted).  "Rather, participation in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts, and the

contributory infringer must have acted in concert with the direct infringer."  *Brought to Life Music, Inc. v. MCA Records, Inc.*, No. 02 Civ. 1164 (RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003) (internal quotation marks omitted).

Plaintiffs have alleged a material contribution to infringement.  Accepting the complaint's allegations as true, the webmasters act "under [Defendants'] direction and control" and are "encourage[d]" by Defendants to steal content.  (Compl. ¶ 23.)  The webmasters are also given "detailed instructions" on the content to be displayed on the websites.  (*Id.* ¶ 44.)  On this basis, Plaintiffs allege, "Defendants induce, cause and/or materially contribute to the dummy webmasters' theft of Plaintiff's [sic] photographs."  (*Id.* ¶ 42.)  Once again, while the allegations are thin, they are sufficient to meet the requirement that Plaintiffs authorized and acted in concert with the webmasters to infringe on Plaintiffs' photographs.

The motion to dismiss is denied as to the contributory infringement claim.

### 3.      Vicarious Copyright Infringement

A defendant is liable for vicarious infringement where it "profits from direct infringement while declining to exercise a right to stop or limit it."  *In re Cellco*, 663 F. Supp. 2d. at 370 (quoting *Grokster*, 545 U.S. at 930) (brackets omitted); *see also Softel, Inc. v. Dragon Medical & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997).  More specifically, "a defendant is vicariously liable for infringement where 'the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired.'"  *Smith v. Mikki More, LLC*, No. 13 Civ. 3888 (DLC), 2014 WL 1875929, at *3 (S.D.N.Y. May 9, 2014) (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 36 (2d Cir. 2012)).

On the control prong, "[a] defendant's ability to block infringers' access to a particular environment for any reason constitutes proof of its right and ability to supervise and control the

infringing activities." *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 Civ. 4660 (SHS), 2002 WL 1997918, at *11 (S.D.N.Y. Aug. 29, 2002) (internal quotation marks omitted).  Plaintiffs have alleged that Defendants "retain the right of full control over the content of the websites, including uploaded images"; that Defendants "maintain sole discretion to refuse or remove any content"; and that Defendants "could take simple measures to prevent the theft, but fail to do so." (Compl. ¶¶ 35, 39, 41.)  This is sufficient to plead that Defendants had the right and ability to supervise the use of the websites.[7]

As to the financial prong, Plaintiffs must allege a "causal relationship between the infringing activity and any financial benefit the defendant reaps," but the "financial benefit need not be tied directly to sales of the infringing goods." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996)).  This causal relationship is clear, for example, "where infringing material acts as a 'draw' to attract subscribers to a defendant's business." *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931, 2014 WL 4851719, at *3 (S.D.N.Y. Sept. 29, 2014).  The complaint alleges that "[a]lmost all, if not all, of the photographs that appear on Defendants' websites are stolen," and that the websites "contain paid advertisements."  (Compl. ¶¶ 27, 45.)  Drawing all inferences in favor of Plaintiffs, many of the millions of alleged monthly visits to Defendants' websites are drawn by the "most conspicuous use of the websites," which is the "display of Plaintiff's [sic] stolen photographs."  (*See id.* ¶¶ 26, 43.)  Further, Defendants allegedly "turn a blind eye to the theft for

---

[7] Defendants assert that the "Terms of Use" referenced in the complaint provide that "webmaster/users control the content posted on the Fan Sites, subject only to general rules applicable to the Fan Sites . . . ." (Defs.' Br. at 11.)  But certain of the documents offered by Defendants as constituting part of the "Terms of Use" state that the website owners have the right, in their sole discretion, to remove content.  (*See, e.g.*, Dkt. No. 21, Exs. A, B.)  Thus, assuming that these documents constitute the "Terms of Use" and should be considered at the motion to dismiss stage, the terms do not undermine the pertinent allegations of the complaint.

the sake of profit." (*Id.* ¶ 40.) These allegations sufficiently provide factual support to the complaint's conclusion that "Defendants profit from the websites' infringement upon the Plaintiffs' copyrights." (*Id.* ¶ 65.)

The motion to dismiss the vicarious infringement claim is denied.

### 4.    DMCA Safe Harbor

Defendants urge the Court to dismiss the copyright claims under safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, which provide protections to internet service providers under certain conditions. (Defs.' Br. at 18-20.) In order to receive protection under the DMCA safe harbor, a party "must meet a set of threshold criteria." *Viacom Int'l v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012). Among these criteria are requirements that the party qualify as a "service provider," as defined in the statute; adopt and reasonably implement a "'repeat infringer' policy"; and accommodate 'standard technical measures'" used by copyright owners to protect their works. *Id.* (citing 17 U.S.C. § 512(k)(1)(B), 512(i)(1)(A)-(B)). If these requirements are satisfied, then the safe harbor additionally requires showings as to the service provider's lack of knowledge of infringement, its receipt of no direct financial benefit from the infringing activity, its compliance with DMCA takedown requests, and the designation of an agent for such requests. 17 U.S.C. § 512(c)(1)(A)-(C), (2).

"While a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint, the complaint itself must establish the facts necessary to sustain defendant's defense." *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2009 WL 3364036, at *3 (S.D.N.Y. Oct. 16, 2009) (quoting *Official Comm. of Unsecured Creditors v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)) (citation, brackets, and internal quotation marks omitted).

At the complaint stage, there are insufficient facts to demonstrate that the Defendants named in this action satisfy even the threshold requirements.  Defendants bring no credible argument that the complaint and attachments themselves establish, for instance, that they have "reasonably implemented" a repeat infringer policy.  *See* 17 U.S.C. § 512(i)(1)(A); *see also MP3tunes*, 2009 WL 3364036, at *3 ("[T]he Amended Complaint does not establish that MP3tunes meets the threshold requirements to qualify for the safe harbor.  As one example, the Amended Complaint does not plead that MP3tunes adopted, reasonably implemented and informed subscribers of a policy providing that it could terminate the accounts of repeat infringers.").

Defendants may attempt to establish their eligibility for the DMCA safe harbor at a later point in the litigation, when they can present evidence in support of the defense.  At this stage, however, Defendants' premature attempt to qualify for the safe harbor is rejected.[8]

### 5.    RICO Claims

A RICO complaint must show "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotation marks omitted).  To plead a substantive civil RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of

---

[8] Defendants seem to believe that the complaint would have to allege that they *failed* to meet the DMCA safe harbor requirements, rather than having the burden rest on them to put forth evidence that the requirements are satisfied.  "Because the DMCA safe harbors are affirmative defenses, a defendant has the burden of establishing that he meets the statutory requirements." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 509 (S.D.N.Y. 2013) (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1039 (9th Cir. 2013)) (brackets and internal quotation marks omitted).  Further, Defendants' papers transparently cite information outside the complaint to support their argument.  (Defs.' Br. at 19-22 & n.15.)  This tactic is not permitted at this stage of the case.  *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (stating that questions regarding affirmative defenses that "require[] consideration of facts outside of the complaint" are "inappropriate to resolve on a motion to dismiss").

racketeering activity." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (internal

quotation marks omitted).  Because the complaint does not allege the existence of a RICO

enterprise, the substantive RICO claim fails, and thus so does the RICO conspiracy claim.

Additionally, the complaint does not plead that Defendants violated the mail and wire fraud

statutes as RICO predicate offenses.

### a.    RICO Enterprise

"The heart of any civil RICO claim is the enterprise.  There can be no RICO violation

without one." *D. Penguin Bros. v. City Nat'l Bank*, Nos. 13 Civ. 41 (TPG), 13 Civ. 706 (TPG),

2014 WL 982859, at *4 (S.D.N.Y. Mar. 11, 2014), *aff'd*, No. 14-1056-cv, 2014 WL 5293242 (2d

Cir. Oct. 16, 2014).  The complaint fails to outline a RICO enterprise.

A RICO enterprise "includes any individual, partnership, corporation, association, or

other legal entity, and any union or group of individuals associated in fact although not a legal

entity."  18 U.S.C. § 1961(4).  "For an association of individuals to constitute an enterprise, the

individuals must share a common purpose to engage in a particular fraudulent course of conduct

and work together to achieve such purposes." *Cruz*, 720 F.3d at 120 (brackets and internal

quotation marks omitted).  "An 'association-in-fact' enterprise must have at least three structural

features: 1) a purpose, 2) relationships among those associated with the enterprise, and

3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Peterson v.

City of New York*, No. 11 Civ. 3141 (DLC), 2012 WL 75029, at *3 (S.D.N.Y. Jan. 9, 2012)

(citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  In determining whether plaintiffs have

alleged the existence of an association-in-fact RICO enterprise, courts analyze the "hierarchy,

organization, and activities of the alleged association to determine whether its members

functioned as a unit." *Cont'l Petroleum*, 2012 WL 1231775, at *5 (internal quotation marks

omitted).  "A plaintiff's 'conclusory naming of a string of entities does not adequately allege an

20

enterprise.'" *Id.* (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004)).

Here, Plaintiffs have failed to provide any information whatsoever regarding the Defendants' respective roles in the enterprise. Each allegation of purported conduct set out in the complaint is attributed to "Defendants" as a group. The closest that Plaintiffs come to describing the nature of the enterprise is the bare allegation that "Defendants' business is racketeering activity, inasmuch as the enterprise . . . requires on an ongoing basis . . . the participation of all the Defendants working in unison to steal from the Plaintiff [sic]." (Compl. ¶ 71.) The complaint provides no concrete information on the group's organization or hierarchy. Nor is there information from which it could be concluded that Defendants function as a unit or that they shared a common purpose, in the absence of any mention of the roles each Defendant played and the actions they took. *See Cont'l Petroleum*, 2012 WL 1231775, at *6 ("The Amended Complaint's failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal."); *see also First Capital*, 385 F.3d at 174 (concluding that plaintiffs did not allege an enterprise where they "failed to provide . . . solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise," from which the court "could fairly conclude that its 'members functioned as a unit'" (quoting *United States v. Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001)). Plaintiffs' complaint fails to allege any of the three necessary structural features of an association-in-fact enterprise.[9]

---

[9] Furthermore, Plaintiffs' claimed enterprise fails the RICO "distinctness" requirement. "A well-pled 1962(c) claim requires the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cont'l Fin. Co. v. Ledwith*, No. 08 Civ. 7272 (PAC), 2009 WL 1748875, at *4 (S.D.N.Y. June 22, 2009)

Because Plaintiffs have not alleged an enterprise, their RICO claim fails.

### b.        Pattern of Racketeering Activity

A RICO pattern of racketeering activity "must consist of two or more predicate acts of racketeering." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).  The Plaintiff must "show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  "To survive a motion to dismiss, this pattern must be adequately alleged in the complaint." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

"'Racketeering activity,' as defined in RICO, may consist of any of a number of criminal offenses, 18 U.S.C. § 1961(1), including mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014).  Criminal copyright violations can also serve as predicate acts.  *See* 18 U.S.C. § 1961(1) (including as a potential predicate offense the violation of 18 U.S.C. § 2319, "relating to criminal infringement of a copyright").  While Plaintiffs claim that Defendants engaged in both criminal copyright infringement and mail and wire fraud as part of the RICO conspiracy, their complaint fails to plead mail and wire fraud as a predicate RICO act.

*Criminal copyright infringement.*  A person commits criminal copyright infringement if he "willfully infringes a copyright."  17 U.S.C. § 506(a)(1).  Courts have held (and the parties here assume) that "willfulness," for purposes of a criminal copyright violation, requires "proof of

---

(quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)) (some internal quotation marks omitted).  "[T]he plain language and purpose of the statute contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality." *Cruz*, 720 F.3d at 120.  Due to the complaint's failure to make any distinct allegations regarding the particular defendants' roles in the alleged racketeering, Plaintiffs have not alleged a RICO "person" distinct from the supposed "enterprise."

the defendant's specific intent to violate someone's copyright"—that is to say, a "voluntary,

intentional violation of a known legal duty."  *United States v. Liu*, 731 F.3d 982, 989-90 (9th Cir.

2013) (internal quotation marks omitted).  This reading draws support from the criminal

copyright provision, which clarifies that willfulness requires a higher level of proof than civil

copyright liability: "evidence of reproduction or distribution of a copyrighted work, by itself,

shall not be sufficient to establish willful infringement of a copyright."  17 U.S.C. § 506(a)(2).

Moreover, a string of Supreme Court cases has held that the term "willfully" in some criminal

statutes indicates a requirement that the government prove a "specific intent to violate the law."

*Cheek v. United States*, 498 U.S. 192, 200 (1991).

   The complaint states that copyright infringement serves as a predicate act here because

Defendants engaged in:

> The willful infringement of Plaintiffs' copyrights for purposes of
> commercial advantage and private financial gain; the reproduction,
> display and distribution by electronic means, during a one hundred
> eighty (180) day period, of one or more copies of one or more of
> Plaintiff's copyrighted works that have a total retail value of more
> than $1,000.00; and the distribution of Plaintiff's copyrighted
> works by making such available on a computer network accessible
> to members of the public, while knowing, or while they should
> have known, that Plaintiff's works were intended for commercial
> distribution.

(Compl. ¶ 69.)  This portion of the complaint does nothing more than parrot the language of the

statute, which states:

> Any person who willfully infringes a copyright shall be punished
> as provided under section 2319 of title 18, if the infringement was
> committed—
>    (A) for purposes of commercial advantage or private
> financial gain;
>    (B) by the reproduction or distribution, including by
> electronic means, during any 180-day period, of 1 or more copies
> . . . of 1 or more copyrighted works, which have a total retail value
> of more than $1,000; or

> (C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

17 U.S.C. § 506(a)(1). These allegations—which are nothing but legal conclusions—will be disregarded. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

However, as noted above, the complaint also states that Defendants "have knowledge or have reason to know of the dummy webmaster's [sic] theft of Plaintiffs' photographs" and that "Defendants know that the most conspicuous use of the websites is the display [of] Plaintiff's [sic] stolen photographs." (Compl. ¶¶ 37, 43). This suffices to plead willful infringement. Furthermore, Plaintiffs have alleged that Defendants' infringement was committed for purposes of private financial gain. At this point in the litigation, Plaintiffs' use of alleged criminal copyright infringement as a RICO predicate survives.

*Mail and wire fraud.* The Second Circuit has instructed that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford*, 758 F.3d at 489 (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)) (internal quotation marks omitted). "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (citing *United States v. Zagari*, 111 F.3d 307, 327 (2d Cir. 1997)). The first element requires a showing of "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citations omitted). A scheme to defraud has been interpreted to

include "everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future." *United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995) (quoting *Durland v. United States*, 161 U.S. 306, 313 (1896)) (internal quotation marks omitted).

Further, "[w]here . . . the predicate acts on which a RICO claim is based sound in fraud, those acts must be pleaded in conformity with Rule 9(b)'s heightened pleading standard." *Cont'l Petroleum Corp.*, 2012 WL 1231775, at *4; *accord Lundy*, 711 F.3d at 119. In order to comply with Rule 9(b), a complaint alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted). And "[w]hen . . . a complaint contains allegations of fraud against multiple defendants, the plaintiff must plead facts that describe each defendant's involvement in the fraud." *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at *9 (S.D.N.Y. Feb. 22, 2013) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)), *aff'd*, 561 F. App'x 46 (2d Cir. 2014) (summary order).

Plaintiffs have failed to allege mail or wire fraud as predicate acts in connection with their RICO claim. Aside from the several paragraphs of the RICO count itself, there is no mention of fraud in the remainder of the complaint. The RICO claim states, in pertinent part, that "Defendants" used interstate mail or wires to offer free hosting services for the websites, even though "Defendants are well aware that the overwhelming majority, if not the entirety, of the displayed content has been illegally downloaded and infringes upon the proprietary rights . . . of Plaintiffs." (Compl. ¶ 70.) First, the complaint provides no specific claim as to each Defendant's involvement in the fraud. *See Watkins*, 2013 WL 655085, at *9. And more

25

importantly, the complaint fails to explain how this constitutes a "scheme to defraud," which "has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *Autuori*, 212 F.3d at 115 (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)). From a reading of the allegations of the complaint, the purported widespread use of Plaintiffs' images would have been obvious to any visitor to the websites that were part of the Fan Sites Network. There is no allegation that Defendants used any kind of deception or false statement in order to obtain or use the copyrighted photographs.

The complaint alleges that Defendants "induce, cause and/or materially contribute to the dummy webmasters' theft of Plaintiff's [sic] photographs," and that Defendants "turn a blind eye to the theft for the sake of profit." (Compl. ¶¶ 40, 42.) It is clear, however, that even if the complaint alleges the Defendants were complicit in the "theft" of Plaintiffs' photographs, "[o]rdinary theft offenses . . . are not among the predicate activities defined in 18 U.S.C. § 1961(1)," *Spool*, 520 F.3d at 184. The failure to demonstrate a scheme to defraud precludes Plaintiffs from pleading a mail or wire fraud offense as a RICO predicate.[10]

### e.   RICO Conspiracy Claim

Pursuant to 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Where a complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails. *See Reich*, 2014 WL 4067179, at *10 (citing *First Capital*, 385 F.3d at 182); *see also Crawford*, 758 F.3d at 489 ("A conspirator must intend to further an endeavor which, if

---

[10] Also fatal to the mail and wire fraud predicate is the complaint's complete failure to identify any fraudulent statement made by Defendants in furtherance of a scheme to defraud. The requirements of Rule 9(b) focus on specifics about false or misleading statements—who made them, when and where, and particulars of the statements. *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). There is no allegation of any fraudulent statement by Defendants in the complaint.

completed, would satisfy all of the elements of a substantive criminal offense." (internal quotation marks omitted)).  Further, Plaintiffs have "made no additional allegations in pleading a RICO conspiracy claim."  *Li Jun An v. Hui Zhang*, No. 13 Civ. 5064 (PKC), 2013 WL 6503513, at *11 (S.D.N.Y. Dec. 6, 2013).  Indeed, one could easily overlook the complaint's sole specific reference to the RICO conspiracy claim, which is in the introduction to the complaint that precedes its numbered allegations.  (Compl. at 1-2.)  As the complaint fails to state a claim of a substantive RICO violation, it also fails to state a claim for RICO conspiracy.

## III.   Conclusion

For the foregoing reasons, it is hereby ordered that:

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion to dismiss for lack of personal jurisdiction is GRANTED, and the claims against Hollywood.com Holdings, LLC; R&S Investments, LLC; Hollywood Media Corp.; and individual defendants Mitchell Rubenstein and Laurie S. Silvers are DISMISSED.  The motion to dismiss for failure to state a claim is GRANTED as to the RICO claims and DENIED as to the remainder of the claims.

Defendants shall answer the remaining claims in the complaint by December 12, 2014.

The Clerk of Court is directed to terminate the motion at docket number 18.

SO ORDERED.


Dated: November 14, 2014
       New York, New York

_____
                 J. PAUL OETKEN
               United States District Judge