UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                          :
BWP MEDIA USA INC., NATIONAL PHOTO        :
GROUP, LLC, and FAMEFLYNET, INC.,         :
                                   Plaintiffs,   :          14-CV-121 (JPO)
                                                          :
            -v-                                   :          OPINION AND ORDER
                                                          :
HOLLYWOOD FAN SITES LLC, FAN SITES    :
ORG, LLC, and HOLLYWOOD.COM, LLC,     :
                                  Defendants.  :
--------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiffs BWP Media USA Inc. ("BWP"), National Photo Group, LLC ("NPG"), and

Fameflynet, Inc. ("FFN"; collectively with BWP and NPG, "Plaintiffs") bring this action against

Hollywood Fan Sites LLC ("HFS"), Fan Sites Org, LLC ("FSO"), and Hollywood.com, LLC

("Hollywood"; collectively with HFS and FSO, "Defendants"), asserting violations of federal

copyright law.  Now before the Court is BWP and NPG's motion for partial summary judgment,

which seeks to strike the affirmative defense asserted by HFS and FSO under the safe harbor

provisions of the Digital Millennium Copyright Act ("DMCA").  For the reasons that follow, the

motion is granted in part and denied in part.

I.      **Background**

        A.      **Plaintiffs' Allegations**[1]

        Plaintiffs allege that they are the owners of the rights to certain images of celebrities.

(Dkt. No. 67 ("Am. Compl.") ¶¶ 2, 4, 6-7.)  They possess valid copyright registrations from the

---

[1] The description of Plaintiffs' allegations is drawn from the amended complaint.  These allegations are set out here only for background.  They are not relevant to this motion for partial summary judgment, which focuses narrowly on whether Defendants can assert an affirmative defense under the DMCA.

U.S. Copyright Office ("USCO") for some photographs, and have registrations pending for others.  (*Id.* ¶ 17.)

According to the complaint, Defendants own and operate more than 4,500 websites called the "Fan Sites Network," which are dedicated to celebrities.  (*Id.* ¶ 21-22.)  Plaintiffs allege that their photographs appear on websites operated by Defendants without a license and in violation of Plaintiffs' rights.  (*Id.* ¶¶ 26-30.)  The websites are run by individuals (termed "dummy webmasters" in the complaint) who maintain them and update their contents, subject to Defendants' "right of full control."  (*Id.* ¶¶ 31-33.)  Although "the most conspicuous use" of the websites "is the display of Plaintiffs' stolen [p]hotographs," and although Defendants "have knowledge or have reason to know of the dummy webmasters' theft" of the images, Defendants nonetheless do not prevent the infringing activity.  (*Id.* ¶¶ 34-35, 41.)

### B.     Procedural History

This case was initially filed by BWP and NPG on January 8, 2014, against Defendants and several other entities and individuals.  (Dkt. No. 1.)  This Court granted in part and denied in part a motion to dismiss on November 14, 2014.  *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14 Civ. 121 (JPO), --- F. Supp. 3d ---, 2014 WL 6077247 (S.D.N.Y. Nov. 14, 2014).  That decision dismissed claims against the parties other than Defendants for lack of personal jurisdiction, *id.* at *2-4, and also dismissed claims under the Racketeer Influenced and Corrupt Organizations Act for failure to state a claim, *id.* at *11-15.  The remaining claims of copyright infringement were permitted to proceed.

Defendants answered the complaint on December 12, 2014.  (Dkt. No. 35.)  In the answer, Defendants asserted as a third affirmative defense that "Plaintiffs' claims are barred by

the safe-harbor provisions of the [DMCA] . . . ."[2]  (*Id.* at 9.)  On January 7, 2015, BWP and NPG

filed the present motion for partial summary judgment, seeking to strike the DMCA-based

affirmative defense.  (Dkt. No. 45.)  Defendants opposed the motion (Dkt. No. 54), and BWP

and NPG replied (Dkt. No. 62).

In the meantime, each of the three Plaintiffs filed an additional complaint against

Defendants.  *See National Photo Grp., LLC v. Hollywood Fan Sites LLC*, No. 15 Civ. 410

(S.D.N.Y. filed Jan. 20, 2015); *BWP Media USA Inc. v. Hollywood Fan Sites LLC*, No. 15 Civ.

411 (S.D.N.Y. filed Jan. 20, 2015); *Fameflynet, Inc. v. Hollywood Fan Sites LLC*, No. 15 Civ.

412 (S.D.N.Y. filed Jan. 20, 2015).  The Court accepted those cases as related to this action, and

the parties stipulated that the three new actions would be consolidated into this case.  (Dkt. No.

66.)  Plaintiffs also represented that they would file an amended complaint to "eliminat[e] any

duplication among the four complaints" within twenty days of the entry of the order on April 17,

2015.  (*Id.* at 2.)  Although Plaintiffs filed the amended complaint several days late, the parties

agreed that it would be accepted for filing and would become the operative pleading in this

action.  (Dkt. Nos. 67, 69.)

On May 20, 2015, Plaintiffs filed a letter in which they stated that the amendment to the

complaint has no effect on the present motion for partial summary judgment.  (Dkt. No. 70.)

## II.    Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a

---

[2] Defendants have raised the same affirmative defense in their answer to the amended complaint.
(*See* Dkt. No. 76, at 11.)

whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the party bearing the burden of proof at trial must come forward with evidence on each element of its claim or defense illustrating its entitlement to relief. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). It cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250-51. The court should view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

Where, as here, "a plaintiff uses a summary judgment motion . . . to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (internal quotation marks and brackets omitted).

## III.   Discussion

BWP and NPG move for partial summary judgment to strike HFS's and FSO's assertion of an affirmative defense under the safe harbor provisions of the DMCA, 17 U.S.C. § 512.

A.     DMCA Safe Harbor

"[T]he DMCA added four safe harbor provisions to the Copyright Act . . . , which shield service providers from liability for copyright infringement under certain circumstances." *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12 Civ. 6646 (AJN), 2015 WL 1402049, at *5 (S.D.N.Y. Mar. 25, 2015) (citing 17 U.S.C. § 512(a)-(d)).  In order to receive protection under the DMCA safe harbors, a party "must meet a set of threshold criteria." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012).  Among these criteria are requirements that the party qualify as a "service provider," as defined in the statute; adopt and reasonably implement a "'repeat infringer' policy"; and "accommodate 'standard technical measures' that are 'used by copyright owners to protect copyrighted works.'"  *Id.* (quoting 17 U.S.C. § 512(k)(1)(B), 512(i)(1)(A)-(B), (i)(2)).

If these initial requirements are satisfied, then "a party may be eligible for one or more of the four 'safe harbor' provisions codified at 17 U.S.C. § 512(a) through § 512(d)." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 745 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (summary order).  The safe harbor that may apply in this case is § 512(c), which "covers infringement claims that arise 'by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider.'"  *Viacom*, 676 F.3d at 27 (quoting 17 U.S.C. § 512(c)(1)).

At issue in this motion is § 512(c)'s requirement that a service provider "designate[] an agent to receive notifications of claimed infringement."  17 U.S.C. § 512(c)(2).  To effectively make such a designation, "[t]he statute requires that the service provider make 'available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information[:] the name, address, phone number,

5

and electronic mail address of the agent.'" *Wolk*, 840 F. Supp. 2d at 748-49 (quoting 17 U.S.C. § 512(c)(2)) (ellipsis omitted).[3]

A service provider cannot retroactively qualify for the safe harbor for infringements occurring before the proper designation of an agent under the statute. *See* 17 U.S.C. § 512(c)(2) ("The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described in [the subsequent paragraph] . . . ."); *see also Oppenheimer v. Allvoices, Inc.*, No. C 14-00499 (LB), 2014 WL 2604033, at *5 (N.D. Cal. June 10, 2014) (citing cases and holding that the defendant "may not invoke the safe harbor found in Section 512(c)(1) with respect to infringing conduct that occurred prior to [the defendant's] designating a DMCA-related agent with the Copyright Office"); *Costar Grp. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 697 n.4 (D. Md. 2001) ("It is undisputed that [the defendant] did not designate an agent until December 8, 1999.  Therefore, the safe harbor is only available to [the defendant] with regard to its liability (if any) arising after that date." (citation omitted)), *aff'd*, 373 F.3d 544 (4th Cir. 2004).

### B. Application

BWP and NPG request that the Court bar HFS and FSO from seeking the § 512(c) safe harbor based on their assertion that there was no agent designated for DMCA notifications by HFS and FSO at the time of the infringements alleged in the complaint.[4]  (Dkt. No. 47 ("Pl. Br.")

---

[3] While the statute requires only that a service provider provide "substantially" such information, the case law and legislative history suggest that the DMCA's substantial compliance rule forgives only "insubstantial departures" from the requirements, such as "misspelling a name, supplying an outdated area code if the phone number is accompanied by an accurate address, supplying an outdated name if accompanied by an e-mail address that remains valid for the successor of the prior designated agent or agent of a copyright owner." *Perfect 10, Inc. v. Amazon.com, Inc.*, No. CV-05-4753 (AHM) (SHX), 2009 WL 1334364, at *8 (C.D. Cal. May 12, 2009) (quoting H.R. REP. NO. 105-551, at 56 (1998)) (internal quotation marks omitted).

[4] There is no dispute that HFS and FSO are "service providers" for purposes of qualifying for the safe harbor.  (*See* Dkt. No. 62, at 3.)

at 5.)  In support of this assertion, they offer records from USCO's directory of agent registrations, which show DMCA agent designations from HFS and FSO filed on April 29, 2014—after the filing of this lawsuit.  In response, Defendants assert that they "fully complied with the statutory requirements for DMCA safe-harbor protection."  (Dkt. No. 54 ("Def. Br.") at 2.)  The Court considers the question as to FSO and HFS in turn.

### 1.    FSO

FSO is a subsidiary of Hollywood.  (Dkt. No. 57 ("Marder Decl.") ¶ 3.)  Defendants present evidence that FSO first filed a DMCA agent designation[5] with the USCO on November 5, 2012.  (Dkt. No. 56 ("Cox Decl.") Ex. A.)  That designation was amended on December 5, 2013, and again on April 29, 2014.  (*Id.* Exs. B, C.)  This evidence is not contested by BWP and NPG.  (*See* Dkt. No. 62 ("Pl. Reply") at 2-3.)

BWP and NPG assert that partial summary judgment is still appropriate to bar FSO from seeking the DMCA safe harbor for infringements shown to have preceded that date.  (*Id.* at 6.)  It does not appear that Defendants meaningfully contest this assertion, and the Court agrees. Accordingly, the motion for partial summary judgment as to FSO is granted in part.  Defendants are barred from asserting the DMCA safe harbor for any infringement by FSO that is shown to have occurred before November 5, 2012.[6]

---

[5] Because the designations relevant to this case are filed under *interim* USCO regulations— which will remain in effect until the promulgation of final regulations—these designations are titled "Interim Designation of Agent to Receive Notification of Claimed Infringement."  (*See* Cox Decl. Ex. A; Dkt. No. 62, at 4-5.)  For clarity, the Court omits the term "interim" in referring to the designations.

[6] Plaintiffs assert that the earliest date on which they have alleged infringements is March 17, 2011, citing the exhibits to the complaint.  (Dkt. No. 61 ("Pl. 56.1 Counterstatement") ¶ 4.) While those exhibits claim that certain photographs were *registered* with effective dates as early as March 17, 2011 (*see, e.g.*, Am. Compl. Ex. 1 at 1, reference numbers 1001 to 1005), they also assert that Plaintiffs' *observations* of acts of infringement took place, at the earliest, in 2013. (*See* Am. Compl. Ex. 1.)  The present record does not contain evidence of acts of infringement that predate FSO's November 2012 DMCA registration.  However, there is no need at this stage

2.      **HFS**

The agent-designation question is more complex as relates to HFS.  HFS, like FSO, is a subsidiary of Hollywood.  (Marder Decl. ¶ 3.)  Defendants present evidence that HFS filed a DMCA agent designation on December 5, 2013, and amended that designation on April 29, 2014.  (Cox Decl. Exs. E, F.)  Defendants also rely on a designation filed by Hollywood on November 3, 2008.  (Marder Decl. ¶ 5 & Ex. A.)  Declarations supplied by Defendants claim that Hollywood filed that designation "on behalf of itself and its subsidiaries and affiliates, which necessarily included Hollywood Fan Sites, LLC" (*id.* ¶ 5), and that HFS was "intended to be covered" by the Hollywood designation (Cox Decl. ¶ 7).

Section 512(c), as noted above, states that a service provider may seek the safe harbor "only if the service provider has designated an agent to receive notifications of claimed infringement . . . by making available through its service, including on its website in a location accessible to the public, *and* by providing to the Copyright Office," the contact information of the agent.  17 U.S.C. § 512(c)(2) (emphasis added).  The section requires that each service provider "provid[e] to the [USCO]" the "the name, address, phone number, and electronic mail address of the agent," along with "other contact information which the Register of Copyrights may deem appropriate."  *Id.*  Furthermore, the statute provides, "The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet . . . ."  *Id.*; *see also* 4 NIMMER ON COPYRIGHT § 12B.04[3] (updated 2015) (stating that the reason for this requirement is "[t]o facilitate easy access to the identity of all designated agents").  Thus, § 512(c) makes clear that it contemplates two parallel sources—the provider's website and the USCO directory—where each service provider's DMCA agent information is

_____

to determine whether Plaintiffs will ultimately be able to prove any infringement by FSO that predates November 5, 2012.

readily available to the public.  For a service provider to fulfill only one of these two

requirements is insufficient.

Defendants argue that HFS qualifies for the § 512(c) safe harbor prior to December 2013

because, they assert, the 2008 Hollywood designation covered HFS as well.  The Court

disagrees.  There is nothing in the 2008 Hollywood designation that could be interpreted to make

any reference to HFS.  A section of the DMCA agent designation form for "Full Legal Name of

Service Provider" contains only the name "Hollywood.com, LLC."  (Marder Decl. Ex. A.)  And

in a prompt that calls for "Alternative Name(s) of Service Provider (including all names under

which the service provider is doing business)," the 2008 Hollywood designation provides only

"Hollywood.com" and "Media By Numbers" as alternate names for Hollywood.com, LLC.  (*Id.*)

In the entirety of the designation, there is no mention of HFS.

The Court concludes that the statute does not contemplate that a service provider entity

can be shielded by the safe harbor where that entity has no presence at all in the USCO directory.

*Cf. Perfect 10, Inc. v. Amazon.com, Inc.*, No. CV 05-4753 (AHM), 2009 WL 1334364, at *8

(C.D. Cal. May 12, 2009) (stating that a DMCA agent designation filed with the USCO was

valid where it "enabled anyone who saw it to contact A9's designated agent, through mail, fax,

telephone, or the online complaint form").  It is implausible that parties attempting to find a

provider's DMCA agent designation, using the USCO's database, are expected to have

independent knowledge of the corporate structure of a particular service provider.  *Cf. id.* at *2

("Because A9 was not among the listed entities [on parent company Amazon's designation],

Amazon's copyright agent was not designated to receive notices on behalf of A9.").

Accordingly, the Hollywood designation cannot serve as a basis for HFS's DMCA defense.

Furthermore, even had the 2008 Hollywood designation indicated that it was intended to

cover HFS, it is far from clear that a single designation can cover multiple entities.  The USCO,

acting pursuant to a delegation set out in the statute, has promulgated interim regulations

concerning the DMCA designation until such a time as final regulations take effect.  *See* 37

C.F.R. § 201.38(a).  The preamble to the interim regulations contains a paragraph that explicitly

rejects a joint designation by a parent and subsidiary:

> During the interim period before final regulations are promulgated,
> each Interim Declaration may be filed only on behalf of a single
> service provider.  For purposes of these interim regulations, related
> companies (e.g., parents and subsidiaries) are considered separate
> service providers who would file separate Interim Designations.
> When it considers final regulations, the Office will solicit
> comments as to whether related companies (e.g., parent and
> subsidiary companies) should be permitted to file a single
> Designation of Agent to Receive Notifications of Claimed
> Infringement.

Designation of Agent to Receive Notification of Claimed Infringement, 63 Fed. Reg. 59233,

59234 (Nov. 3, 1998).  Thus, HFS's argument that it could be covered by Hollywood's

designation is disallowed under the USCO's current scheme for the designation of DMCA

agents.[7]

 As a last argument, Defendants assert that they complied with the DMCA because

information concerning a DMCA agent was purportedly available on HFS-hosted websites.  (*See*

Def. Br. at 4, 7-8.)  Using this information, Defendants assert, NPG "submitted alleged

infringement notices requesting the removal of photographs" on HFS-hosted sites on "at least

three occasions," which each resulted in a reply from a Hollywood agent stating that the images

had been removed.  (*Id.* at 4-5.)

 Even assuming the truth of Defendants' factual assertions, however, they are irrelevant.

As stated above, the statutory scheme expressly requires two publicly available, parallel sources

---

[7] Because the Court concludes that there was insufficient information in the Hollywood
designation to cover HFS in any event, the validity of a joint DMCA agent designation is not
squarely presented here.  Accordingly, there is no need to decide whether the USCO's present
interpretation of the statute deserves deference or is otherwise the correct reading of § 512(c)(2).

of a service provider's DMCA agent information (the service provider's website and the USCO directory) in order for that provider to be shielded by the § 512(c) safe harbor.  For this reason, Defendants' assertion that agent information was provided on HFS-controlled websites cannot save HFS from disqualification for the § 512(c) safe harbor.  *See Perfect 10, Inc. v. Yandex N.V.*, No. C 12-01521 (WHA), 2013 WL 1899851, at *8 (N.D. Cal. May 7, 2013) ("The statute plainly specifies that a registered agent is a predicate, express condition—the safe harbor will apply 'only if' such agent has been designated and identified to the Copyright Office for inclusion in the directory of agents.").  Moreover, the fact that HFS may have actually received notices of infringement, and consequently removed the images claimed to be infringing, is also insufficient. *See id.* ("[The defendant's] objection that it received and processed the DMCA notices without having an agent registered with the United States Copyright Office is irrelevant to whether it complied with Section 512(c)(2).  [The defendant's] objections that [the plaintiff] at times sent DMCA notices to the wrong email address, and that it substantially complied with the DMCA takedown requirements in response to the notices are likewise irrelevant.").

Accordingly, BWP and NPG's motion is granted in part as to HFS.  Defendants cannot assert a DMCA safe harbor defense for any infringement by HFS that is shown to have occurred before December 5, 2013—the date on which HFS filed its own DMCA agent designation.

## IV.    Conclusion

For the foregoing reasons, it is hereby ordered that BWP and NPG's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants are barred from asserting a defense under 17 U.S.C. § 512(c) as to FSO for any infringement occurring before November 5, 2012, and as to HFS for any infringement occurring before December 5, 2013.

The Clerk of the Court is directed to close the motion at docket number 45.

SO ORDERED.

Dated:  June 30, 2015
      New York, New York

                                       J. PAUL OETKEN
                             United States District Judge